**Hanus J. GROSZ, M.D., Plaintiff,**

v.

**STATE OF INDIANA, et al., Defendant.**

**No. IP 85–968–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Feb. 21, 1990.

Howard Howe, Indianapolis, Ind., for plaintiff.

Mark A. Dabrowski, Deputy Atty. Gen., Office of the Attorney General, Indianapolis, Ind., for defendants.

## ENTRY GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

TINDER, District Judge.

This cause comes before the court on the defendants' Motion to Dismiss based on lack of subject matter jurisdiction as to some claims pursuant to Fed.R.Civ.P. 12(b)(1) and on failure to state a claim as to the remaining claims pursuant to Fed.R. Civ.P. 12(b)(6).

### I. *Background*

According to the complaint, plaintiff Hanus J. Grosz, M.D., was a licensed and board certified psychiatrist who entered into two written contracts with the Indiana Department of Corrections (department) in July 1983 to provide psychiatric services to offenders who were committed to the department. According to the contracts, Grosz was to serve as a consulting psychiatrist from July 1, 1983, through June 30, 1984; however, the contracts also contained provisions that allowed for termination of the contracts upon thirty days notice by either party. The plaintiff states that he had been performing psychiatric services to the department for approximately twenty years.

Grosz alleges that in November 1983, an attorney for James A. Harris, a state criminal defendant who Grosz had previously examined, contacted Grosz to testify in Harris's state trial. Grosz began testifying in the *Harris* trial on November 30, 1983, and asserts that he testified truthfully. Grosz then alleges that on December 8, 1983, defendant Cloid L. Shuler, Deputy Commissioner for the department, informed Grosz that Shuler and defendant Gordon H. Faulkner, Commissioner of the department, were angry about Grosz's testimony in the *Harris* trial and were going to terminate the consulting contracts. Shuler confirmed the conversation by letter dated December 12, 1983, which terminated the contracts with Grosz effective January 15, 1984. Grosz completed his testimony in the *Harris* trial on January 18, 1984.

Grosz filed this cause of action under 42 U.S.C. § 1983 in federal court on July 1, 1985, naming as defendants the state of Indiana, the department, Faulkner, Shuler, and Deputy Commissioner Gerald White. Grosz alleges that the department terminated his employment contract in retaliation for his testimony, which violated his constitutional rights under the first and fourteenth amendment. Grosz further alleges that the defendants slandered the plaintiff after the termination by making false statements to the media about the reasons for the plaintiff's termination.

Grosz seeks the reinstatement of his employment contract and compensatory damages and attorneys' fees pursuant to 42 U.S.C. § 1988.[1]

The defendants filed a Motion to Dismiss arguing that this court lacks subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) as to the state and the department, and Faulkner, Shuler, and White in their official capacities. In addition, they argue that the remaining portions of the complaint should be dismissed for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).

## II. *Standard of Review*

In deciding a motion to dismiss based upon Fed.R.Civ.P. 12(b)(1), a court should liberally construe the complaint and is not bound to accept as true allegations of jurisdiction where a party properly raises factual questions of subject matter jurisdiction. The court may look beyond the jurisdictional allegations to examine any evidence submitted to determine if subject matter jurisdiction in fact exists. 5 C. Wright & A. Miller, Federal Practice & Procedure, § 1350 (1969); *Gervasio v. United States,* 627 F.Supp. 428, 430 (N.D.Ill.1986).

A complaint should not be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6) unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). However, this broad standard for judging the sufficiency of a complaint "has never been taken literally." *Sutliff, Inc. v. Donovan Cos., Inc.,* 727 F.2d 648, 654 (7th Cir.1984).

[T]he complaint must contain either direct allegations on every material point

necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.

*Id.* (quoting 5 C. Wright & A. Miller, Federal Practice & Procedure § 1216 at 121–23 (1969)).

## III. *Discussion*

The plaintiff's action is brought pursuant to section 1983, which provides a cause of action to redress the violation of federally-secured rights, privileges or immunities by a person or governmental body acting under color of state law. *Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir.1984). Section 1983 reads as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983 (1981).

A person seeking to state a claim under section 1983 must establish two essential elements: (1) the deprivation of a right secured by the Constitution and the laws of the United States; and (2) the person or persons who caused the alleged deprivation

---

**1.** In the plaintiff's complaint, he alleges that the defendants' actions constituted "a violation of 42 U.S.C.1983 and 1985;" however, in the plaintiff's Memorandum in Oppostion [sic] to Defendants' Motion to Dismiss, he requests that this court correct a clerical error and change "1985" to "1988." Apparently, the plaintiff wants to request an award of attorney's fees pursuant to 42 U.S.C. § 1988, which authorizes federal courts to award attorney's fees in section 1983

cases in certain circumstances and is not attempting to allege a cause of action pursuant to 42 U.S.C. § 1985. This court will allow the plaintiff to amend the complaint to request section 1988 fees and to strike that portion of the complaint that alleges a violation of section 1985. Thus, the defendant does not need to address section 1985 in any subsequent pleadings.

were acting under color of state law. *E.g., Gilbreath v. East Arkansas Planning & Dev. Dist., Inc.,* 471 F.Supp. 912, 921 (E.D. Ark.1979).

In the motion to dismiss, the defendants first argue that this court lacks subject matter jurisdiction pursuant to Fed.R. Civ.P. 12(b)(1) as to the state and the department, and Faulkner, Shuler, and White in their official capacities because the eleventh amendment provides immunity from such suits. Second, they argue that the rest of the complaint should be dismissed for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).

**A. Claims against the State of Indiana**

States and their "alter ego" agencies may not be sued in federal court directly in their own names for damages by virtue of the eleventh amendment which reads as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI; *see Hans v. State of Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

Where a government official is the nominal defendant in a suit for damages, but the action is really against the state because the demand is for state money, it is clear that such a suit is barred by the eleventh amendment. *E.g., Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *Brunken v. Lance,* 807 F.2d 1325, 1329 (7th Cir.1986) (holding that if the section 1983 action is for monetary relief that would require damages to paid out of the state treasury to remedy past wrongs, the eleventh amendment bars such an action in the absence of a waiver by the state or a valid override by Congress). The enactment of section 1983 did not abrogate the states' eleventh amendment immunity. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Thus, whenever a government official or agency is sued in federal court under section 1983 for damages, the court must inquire whether the suit is in fact against the state. After it is determined that a government body is the real defendant, the resolution of the eleventh amendment issue "turns on whether the [body] is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend." *Mount Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977).

Determining whether a suit is against a state is not always a simple task. The applicability of the eleventh amendment "is to be determined not by the mere names of the titular parties but by the essential nature and effect of the proceeding, as it appears from the entire record." *In re State of New York,* 256 U.S. 490, 500, 41 S.Ct. 588, 590, 65 L.Ed. 1057 (1921); *see Shockley v. Jones,* 823 F.2d 1068 (7th Cir. 1987); *cf. Meadows v. Indiana,* 854 F.2d 1068, 1069 (7th Cir.1988) (quoting *Kolar v. County of Sangamon,* 756 F.2d 564, 568 (7th Cir.1985)) ("[W]here a complaint alleges that the conduct of a public official acting under color of state law gives rise to liability under Section 1983, we will ordinarily assume that he has been sued in his official capacity and only in that capacity."). However, it is well settled that "the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law." *Scheuer v. Rhodes,* 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974); *see also Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

In this case, it is clear that the state of Indiana has specifically chosen not to waive its immunity under the eleventh amendment. Ind.Code § 34–4–16.7–3 (1982); *see Sheets v. Indiana Dep't of Corrections,* 656 F.Supp. 733 (S.D.Ind.1986). However, whether the state has waived its immunity is now irrelevant because the state cannot be sued in any event in its own

name. In *Will v. Michigan Department of State Police*, — U.S. —, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court held that, regardless of the applicability of the eleventh amendment, a state is not a suable "person" within the meaning of section 1983. Based on all of the cases discussed above, this court finds that the plaintiff is barred from proceeding against the state of Indiana and will dismiss the cause of action as to this defendant.

### B. Claims against the Department of Corrections

■ To determine whether the plaintiff's suit against the department is barred by eleventh amendment immunity, this court must consider the factors set forth by the Seventh Circuit in *Adden v. Middlebrooks*, 688 F.2d 1147 (7th Cir.1982), which include whether the department may sue and be sued in its own name, whether there is any legislative provision stating that the department performs an essential governmental function, whether the department has authority to buy or sell property in its own name, and whether the department is accorded independent status under state law. *Adden*, 688 F.2d at 1153. After examining the statutory provisions set forth in Ind.Code §§ 11–8–2–1 through 11–8–2–10 regarding the organization and powers of the department in light of the above factors, this court finds that the Indiana Department of Corrections performs a state governmental function and that any judgment against the department would be paid out of the state treasury. *See Sheets*, 656 F.Supp. at 736; *Stanley v. Indiana Civil Rights Comm'n*, 557 F.Supp. 330 (1983), *aff'd*, 740 F.2d 972 (7th Cir.1984). Thus, the department is "an arm of the State partaking of the State's Eleventh Amendment immunity." *Mount Healthy City Bd. of Educ.*, 429 U.S. at 280, 97 S.Ct.

at 572. Similarly, since a cause of action against the department is treated as a cause of action against the state, it is also barred because it is not a suable "person" under section 1983. *See Will*, 109 S.Ct. 2304.

### C. Claims against the Individuals

■ To the extent that plaintiff Grosz argues that defendants Faulkner, Shuler, and White are liable for damages in their official capacities, the suit is also barred by the holding in *Will*, as well as the eleventh amendment.[2] *Will*, 109 S.Ct. at 2311; *Cory v. White*, 457 U.S. 85, 90, 102 S.Ct. 2325, 2328, 72 L.Ed.2d 694 (1982); *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). However, a court may award prospective injunctive relief against state officials because such actions are not treated as actions against the state. *Will*, 109 S.Ct. at 2311 n. 10. This is accomplished by the fiction that the official is being sued in his personal capacity.

> [T]he use of the name of the state to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of, and one which does not affect, the state in its sovereign or governmental capacity. . . . [T]he officer . . . is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct.

*Ex parte Young*, 209 U.S. at 159–60, 28 S.Ct. at 454.[3]

■ In this case, the plaintiff requests reinstatement of his employment contract, which is clearly prospective in effect. *See Elliott v. Hinds*, 786 F.2d 298 (7th Cir. 1986). Thus, neither the eleventh amendment nor the holding in *Will* precludes

---

**2.** As the defendants note, the plaintiff's complaint does not clearly designate whether he is suing Faulkner, Shuler and White in their official or personal capacities. *See Kolar*, 756 F.2d 564. Paragraph eight of the complaint does state, however, that the allegedly slanderous statements "were not made by Defendants in the conduct of their duties. . . ." After a careful reading of the complaint, this court will assume that the plaintiff's are suing the individual defendants in both their official and personal capacities.

**3.** Ordinarily, such conduct by state officers will still constitute "state action" under the fourteenth amendment. *Home Tel. & Tel. Co. v. City of Los Angeles*, 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510 (1913).

prospective injunctive relief against Faulkner, Shuler and White.[4]

Given my holding that the plaintiff is not barred from prospective relief, I must now reach the issue of whether Grosz has established a deprivation of a right secured by the Constitution or the laws of the United States. *See Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979); *Jackson v. Byrne*, 738 F.2d 1443, 1445–46 (7th Cir.1984) ("[T]he starting point in an analysis of a Section 1983 claim is the isolation of the specific federal right that plaintiff claims defendant violated when acting under color of state law."). Such a constitutional deprivation may include violations of fourteenth amendment guarantees standing alone, such as procedural due process and equal protection, and violations of those provisions of the bill of rights that are incorporated by the due process clause of the fourteenth amendment and made applicable to the states. *See generally* S. Nahmod, Civil Rights & Civil Liberties Litigation § 2.01 (1986). While the complaint is not a model of clarity, Grosz seems to assert that the termination of his employment contract, coupled with the defendants' allegedly slanderous statements to the media, resulted in an abridgement of his first amendment right of free speech and a deprivation of his property or liberty interests under the fourteenth amendment.

The defendants argued in their motion to dismiss that to the extent that the plaintiff was asserting a procedural due process claim, it was foreclosed by *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and its progeny because the Indiana Tort Claims Act, Ind.Code §§ 34–4–16.5–1 through 34–4–16.5–21, provides an adequate state post-deprivation remedy. *See Thurman v. Rose*, 575 F.Supp. 1488, 1491 (N.D.Ind.1983) (holding that the Indiana Tort Claims Act provided "a meaningful and available postdeprivation remedy for the protection of procedural due process rights" in a prisoner's section 1983 action alleging deprivation of property without due process). If the plaintiff is raising a procedural due process claim, this raises an interesting question of whether the Indiana Tort Claims Act provides an adequate remedy in this case. Under the act, "[a] governmental entity or an employee acting within the scope of his [or her] employment is not liable if a loss results from ... [t]he performance of a discretionary function." Ind.Code § 34–4–16.5–3. Whether an act is discretionary and therefore immune is a question of law that a court must answer in light of the Indiana Supreme Court's test set forth in *Peavler v. Board of Commissioners*, 528 N.E.2d 40 (Ind.1988). Writing for the majority, Chief Justice Shepard rejected the ministerial/discretionary test because it focused on the resulting conduct, rather than the type of decision. Instead, the Indiana Supreme Court adopted the planning/operational test because it advances the public policy underlying governmental immunity. *Peavler*, 528 N.E.2d at 46. Under this test, discretionary immunity insulates policy and political decisions, such as decisions that involve the "formulation of basic policy decisions characterized by official judgment or discretion in weighing al-

---

4. The defendants argue that this cause of action should be dismissed against White because the plaintiff fails to allege that White was personally responsible for any of the allegedly harmful acts and that such a suit cannot be predicated upon a respondeat superior theory of liability. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Wolf–Lillie v. Sonquist*, 699 F.2d 864 (7th Cir. 1983). While it is true that respondeat superior cannot be applied to superiors in a section 1983 suit, this court finds that the complaint may allege such requisite personal involvement in paragraph eight in which it states that when the news media inquired about the plaintiff's termination, "Defendants slandered Plaintiff...."

While this unspecific reference to the "defendants" does not make it clear if this includes defendant White, it appears that White was sent a copy of the letter to Grosz confirming his termination and, thus, that White might have been aware of the situation in order to make statements to the media. Clearly, defendant White will have an opportunity at trial to show that he was not personally responsible for any of the alleged wrongs and that he cannot be held liable under respondeat superior. However, at this stage in the proceedings, the plaintiff has alleged enough facts from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.

ternatives and choosing public policy." *Id.* at 45. This analysis does not extend immunity to all acts involving choice or judgment. *Id.* at 44. The court noted that extended fact-finding may be necessary for the court to make a decision and that the analysis would be analogous to the question of immunity as a defense in a motion for summary judgment. *Id.* at 46 n. 1.

If the plaintiff's claims could be brought under the Indiana Tort Claims Act, would this provide an adequate remedy if the actions complained of were discretionary functions performed by the defendants and, thus, all the defendants were absolute immune from liability? In *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the United States Supreme Court avoided deciding whether the availability of absolute immunity to all potential tort defendants means that a state post-deprivation remedy is rendered inadequate. In a companion case decided the same day as *Daniels,* Justice Blackmun, joined by Justice Marshall, argued in dissent that the answer must be yes. *Davidson v. Cannon,* 474 U.S. 344, 349, 106 S.Ct. 668, 671, 88 L.Ed.2d 677 (1986); *see also Hudson v. Palmer,* 468 U.S. 517, 535–36 & n. 15, 104 S.Ct. 3194, 3204–05 & n. 15, 82 L.Ed.2d 393 (1984) (holding that state remedies were adequate after determining that state law did not provide absolute immunity). Indeed, if procedural due process requires a *meaningful* opportunity to be heard, then it seems that immunity in state court would foreclose such an opportunity and render the remedy inadequate.[5] Nonetheless, in this case, it does not appear to this court that the plaintiff is complaining that his procedural due process rights were violated. He does not complain that he had a right to, but did not receive, notice and an opportunity to be heard before his employment contract was terminated. The plaintiff does respond to the defendants' argument that there was no procedural due process violation, but his response reflects a misunderstanding of *Parratt,* and he makes no further allegations to support a procedural due process claim. Thus, this court finds that the plaintiff has not alleged a procedural due process claim, and *Parratt* and its progeny are inapplicable at this juncture. However, this court will allow the plaintiff thirty days from the date of this entry to amend the complaint to allege a procedural due process claim if he, in good faith after reasonable inquiry into the facts and law, believes that such a claim is viable. *See* Fed.R.Civ.P. 15; *see also* Fed.R.Civ.P. 11. The individual defendants will then have fifteen days to file an amended answer.

The plaintiff's claim for prospective relief seems to be more analogous to the claim asserted in *Elliott* in which an allegedly tenured pharmacist employed by the Indiana State Veterans' Home was terminated purportedly because of his efforts to correct the practice of dispensing out-dated drugs. The termination was accompanied by a series of allegedly defamatory press releases that the plaintiff claimed prevented him from obtaining employment as a pharmacist. *Elliott,* 786 F.2d 298. The plaintiff brought a two-count complaint against the Veterans' Home and various state officials in their official and personal capacities. Count one was a section 1983 claim for alleged deprivation of rights under the first and fourteenth amendments. The plaintiff specifically claimed an abridgement of his first amendment right of free speech, a violation of procedural due process, and a deprivation of his property and liberty interests. Count two alleged pendent state defamation claims.[6] The plaintiff sought reinstatement, expungement of his employment record, and damages. In an interlocutory appeal, the Seventh Circuit first held that the eleventh amendment did not preclude the requested injunctive relief because it was prospective in nature. Second, the court held that the plaintiff had stated a cause of action under section 1983 for deprivation of a liberty

---

5. Of course, the usefulness of this argument to the plaintiff would depend on whether the individual defendants had acted within or outside the scope of their employment.

6. This court does not read the complaint as alleging a pendent state law claim for slander.

interest due to the defendants' allegedly defamatory statements. *Id.* at 302.

Defamation without more will not support a section 1983 action under the precepts of *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). However, "we have made clear that defamation together with other action (which need not itself be a deprivation of either liberty or property under the Fourteenth Amendment) may work to deprive a plaintiff of a liberty or property interest, so that the two things together state a § 1983 claim." *Bone [v. City of Lafayette, Ind.],* 763 F.2d [295] at 297–98 ([7th Cir.] 1985). Elliott's "defamation" claim is that the defendants' statements combined with the discharge deprived Elliott of a protectable liberty interest by stigmatizing him and preventing him from pursuing his career. In the context of termination coupled with defamatory statements "a liberty interest is implicated when either (1) the individual's good name, reputation, honor or integrity are at stake by such charges as immorality, dishonesty, alcoholism, disloyalty, communism, or subversive acts; or (2) the state imposes a stigma or other disability on the individual which forecloses other opportunities." *Munson v. Friske,* 754 F.2d 683, 693 (7th Cir.1985).

*Elliott,* 786 F.2d at 302.

■ Thus, damage to one's reputation, when suffered in the termination of one's employment, may be actionable. *Paul,* 424

U.S. at 710, 96 S.Ct. at 1165. Lower courts have expanded the scope of this protected liberty interest to include the reputation of an independent contractor. *See Transco Sec., Inc. v. Freeman,* 639 F.2d 318 (6th Cir.), *cert. denied,* 454 U.S. 820, 102 S.Ct. 101, 70 L.Ed.2d 90 (1981); *Old Dominion Dairy Prods., Inc. v. Secretary of Defense,* 631 F.2d 953 (D.C.Cir.1980); *Clark v. City of Kansas City,* 1989 WL 156799 (D.Kan. 1989). In this case, this court finds that Grosz has stated a cause of action under section 1983 for deprivation of a liberty interest protected by the fourteenth amendment against the individual defendants in which he seeks prospective injunctive relief.[7]

To the extent that plaintiff Grosz argues that the defendants are liable for damages in their personal capacities, the eleventh amendment would not bar the action. However, the issue of individual immunity would then be applicable.

Certain classes of individual defendants are absolutely immune and not proper defendants for damages purposes under section 1983. *See, e.g., Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (judges who act within or in excess of jurisdiction but not in clear absence of all jurisdiction are absolutely immune); *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (prosecutors who act as advocates in the criminal process are absolutely immune); *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed.

---

7. The defendants argue that reinstatement of the plaintiff's contract is not a viable remedy in light of the Seventh Circuit's holding in *Hostrop v. Board of Junior College District Number 515,* 523 F.2d 569 (7th Cir.1975), *cert. denied,* 425 U.S. 963, 96 S.Ct. 1748, 48 L.Ed.2d 208 (1976). In *Hostrop,* a former public junior college president brought a civil rights action to recover for an alleged wrongful termination of his employment. When discussing the plaintiff's available relief, the court stated, "Five years have elapsed since plaintiff's employment was terminated. His employment contract, even if it had continued in force, would long since have expired. Under these circumstances, injunctive relief would be manifestly inappropriate...." *Hostrop,* 523 F.2d at 579. In this case, Grosz's contract expired by its own terms on June 30, 1984, and he did not file this suit until July 1, 1985.

In *Hostrop,* however, the "wrong done the [teacher] was not the termination of his employment," which the trial court found was for just cause. *Id.* Rather, the "wrong" was the deprivation of the teacher's procedural due process right. The Seventh Circuit found the latter "wrong" to be insufficient to justify reinstatement after the contract had expired in light of the trial court's finding that the termination was justified. Furthermore, a money judgment was not precluded in *Hostrop* by the eleventh amendment because Illinois had waived any immunity the school board might have had. *Id.; see Unified School Dist. Number 480 v. Epperson,* 583 F.2d 1118 (10th Cir.1978). Thus, this court holds that *Hostrop* is not dispositive on the issue of whether the plaintiff is entitled to prospective injunctive relief in this case.

1019 (1951) (state legislators who act within their traditional legislative capacity are absolutely immune).

While not entitled to absolute immunity, state executive officials, along with certain other state officials, who are sued in their personal capacity are entitled to a qualified immunity from damages liability. *See Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978) (prison officials); *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975) (mental hospital administrators); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) (school board members); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (police officers). Such officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (rejecting the subjective part of the qualified immunity test as set forth in *Wood,* 420 U.S. 308, 95 S.Ct. 992); *see Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The existence of clearly settled law is typically a question for the court.

 It is not disputed that Grosz was an independent contractor who was engaged to provide services to the department pursuant to Ind.Code § 11–8–3–1(c).[8] Furthermore, the contract between Grosz and the department stated, "Agreement may be terminated upon thirty (30) days notice by either party." While there were cases in 1983 concerning first amendment violations by government in employment situations,[9] this court agrees with the defendant that there were no cases indicating that the termination of an agreement with an independent contractor in compliance with the terms of the agreement might rise to a first amendment violation. *Cf. Perkins v. Lukens Steel Co.,* 310 U.S. 113, 127, 60 S.Ct. 869, 876, 84 L.Ed. 1108 (1940) (noting that the government has the power to fix the terms and conditions upon which it will contract in purchasing); *Coyne–Delaney Co. v. Capital Dev. Bd.,* 616 F.2d 341, 342 (7th Cir.1980). Neither this court, nor the plaintiff, can find the establishment of a first amendment right to contract with the state as of 1983—the time of the department's termination of the plaintiff's contract. Because this court can find no clearly established statutory or constitutional right of which the defendants should have known that their conduct violated, the individual defendants are entitled to qualified immunity as to that portion of this section 1983 suit in which the plaintiff seeks damages for the defendants' violation of his first amendment rights.

## IV. *Conclusion*

Based on the above-stated reasons, this court will GRANT IN PART the defendants' motion to dismiss as to the state of Indiana and the department of corrections. As to the individual defendants, this court will dismiss the cause of action except to the extent that the plaintiff alleges a deprivation of his fourteenth amendment liberty interest in which he seeks prospective injunctive relief.[10] As stated above, this court will allow the plaintiff thirty days from the date of this entry to amend the complaint to allege a procedural due process claim if he, in good faith after reasonable inquiry into the facts and law, believes that such a claim is viable. The defendants will then have fifteen days to file an amended answer.

---

**8.** Ind.Code § 11–8–3–1(c) states that "[t]he department may contract with individuals for the provision of services to the department."

**9.** *See, e.g., Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968); *Wentz v. Klecker,* 721 F.2d 244 (8th Cir.1983).

**10.** This court will not enter judgment pursuant to Fed.R.Civ.P. 54(b), but will wait until all of the issues are disposed of before entering final judgment pursuant to Fed.R.Civ.P. 58.