**DeHARDER INVESTMENT CORP., a Florida corporation, Locust Hill, L.P., an Indiana limited partnership, and Hickory Ridge, L.P., an Indiana limited partnership, Plaintiff,**

v.

**INDIANA HOUSING FINANCE AUTHORITY, and John Stock, in his capacity as Tax Credit Administrator of the Indiana Housing Finance Authority, Defendant.**

**No. IP 95–1044 C B/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Dec. 8, 1995.

Melvin R. Daniel, Dann Pecar Newman Talesnick & Kleiman, Indianapolis, Indiana, David S. Oliver, Honigman Miller Schwartz & Cohn, Orlando, Florida, for Plaintiff.

Gene R. Leeuw, Klineman Rose Wolf & Wallack, Indianapolis, Indiana, for Defendant.

## ENTRY

BARKER, Chief Judge.

This matter is before the Court on the following motions: (1) defendants Indiana Housing Finance Authority ("IHFA" or "the Authority") and John Stock's motion to dismiss; (2) plaintiffs DeHarder Investment Corp. ("DeHarder"), Locust Hill, L.P. ("Locust Hill") and Hickory Ridge, L.P.'s ("Hickory Ridge") motion for preliminary injunction. For the reasons set forth below, defendants' motion is granted and plaintiffs' motion is denied as moot.

## I. FACTUAL BACKGROUND

DeHarder is a Florida corporation that engages in the construction and management of real estate developments. Locust Hill and Hickory Ridge are the proposed developers for multi-unit, low-income housing developments in Indianapolis and Anderson, Indiana, respectively. DeHarder's president, Robert DeHarder, also acts as the president of Cornerstone Partners 32, Inc., which is a general partner of both Locust Hill and Hickory Ridge.

On February 22, 1995, Locust Hill and Hickory Ridge each submitted tax credit applications to the IHFA. Pursuant to section 42 of the Internal Revenue Code, 26 U.S.C. § 42, the federal government makes available federal income tax credits in order to stimulate private developers to invest in and construct rental housing for low-income tenants. In Indiana, the agency responsible for re-

serving and then awarding the tax credits to qualified applicants is the IHFA, which ranks all applicants according to certain criteria contained in § 42 and the Indiana Allocation Plan ("the Plan"). Defendant John Stock was the tax credit administrator for the IHFA at the time Locust Hill and Hickory Ridge each applied for the tax credits.

In May, 1995, the Authority notified DeHarder by phone that its Locust Hill and Hickory Ridge applications had each been denied. The purported reason for the failure of the Locust Hill project was that it exceeded the "per unit cost limitations" established by the IHFA. The Authority also stated that the Hickory Ridge Project did not score enough points to warrant a reservation of credits.

After receiving this oral notification, DeHarder made demands of the Authority on June 7, 1995, and on July 11, 1995, in order to ascertain *inter alia* why both projects were rejected. Plaintiffs were particularly interested in receiving written notifications explaining the Authority's rationale and detailed descriptions of each project's shortcomings in relation to successful applicants. The defendants denied the requests on July 21, 1995. Plaintiffs responded by filing the instant suit on August 7, 1995. In the five-count complaint, they allege that the defendants have violated (1) the due process clause of the U.S. Constitution (Count II), (2) § 42 of the Internal Revenue Code (Count I), and (3) the federal Freedom of Information Act, 5 U.S.C. § 552 *et seq.*, (Count V). Plaintiffs also assert three state-law claims, including promissory estoppel (Count III), fraud (Count IV) and violations of the Indiana Access to Public Records Act, I.C. § 5–14–3–1 *et seq.*, (Count V). On August 8, 1995, plaintiffs moved for preliminary injunctive relief. Defendants responded by moving to dismiss

the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on August 23, 1995.

## II. MOTION TO DISMISS

 Because of its potentially dispositive nature, we will address defendants' motion to dismiss first. On a motion to dismiss, all well-pleaded factual allegations are presumed to be true. *Land v. Chicago Truck Drivers*, 25 F.3d 509, 511 (7th Cir.1994). The Court must view those allegations in the light most favorable to the plaintiff, *Gould v. Artisoft, Inc.*, 1 F.3d 544, 546 (7th Cir.1993), and accept all reasonable inferences to be drawn from those allegations are true. *Meriwether v. Faulkner*, 821 F.2d 408, 410 (7th Cir.), *cert. denied*, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987). The Court is not constrained, however, by the plaintiffs' legal characterizations of their allegations. *Republic Steel Corp. v. Pa. Engineering Corp.*, 785 F.2d 174, 183 (7th Cir.1986).

### A. The Eleventh Amendment Does Not Bar This Action.

 States may not be sued in federal court directly in their own names by virtue of the eleventh amendment, which reads:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.[1] Undeniably, "eleventh amendment jurisprudence has not precisely followed the text of the amendment." *Kroll v. Board of Trustees*, 934 F.2d 904, 906 (7th Cir.1991). At its simplest, however, the amendment immunizes a state from suit in federal court unless one of two well-established exceptions exists.[2] Significantly, for

---

**1.** Because defendants assert that the eleventh amendment bars jurisdiction over the plaintiffs' claims, their motion is better considered a motion to dismiss for lack of subject matter jurisdiction pursuant to subsection (b)(1) rather than subsection (b)(6). When ruling on a 12(b)(1) motion, a court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir.1995). A court may properly look beyond the jurisdiction allega-

tions of a complaint, however, and view whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists. *Id.*

**2.** The two exceptions, waiver by the state and abrogation by Congress pursuant to its enforcement powers under the fourteenth amendment, are not applicable here. *See, e.g., Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985).

purposes of this analysis, state agencies are entitled to the same protection as are states. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984); *Kroll,* 934 F.2d at 907.

■ Under certain circumstances, the eleventh amendment also prevents suits against state officials. The key inquiry is whether the state is "the real, substantial party in interest." *Pennhurst,* 465 U.S. at 101, 104 S.Ct. at 908. Thus, as a general rule, suits against state officials in their personal capacities pose no eleventh amendment problems because an award of damages could be executed only against the official's personal assets. *See Kentucky v. Graham,* 473 U.S. 159, 165–67, 105 S.Ct. 3099, 3104–07, 87 L.Ed.2d 114 (1985). Official-capacity suits, by contrast, involve the resources of the State treasury, thus implicating eleventh amendment protections. Ever since *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), however, official-capacity suits seeking prospective relief may not be barred.

■ According to defendants, this suit involves an action against a state agency—the IHFA—as well as an official-capacity suit against Stock for retroactive relief. Thus, defendants maintain that "this Court has no subject matter jurisdiction over the entire Complaint as it pertains to the IHFA and over Counts I, II, III, and IV as they pertain to Stock." (Defendants' Brief in Support, p. 2).

■ Determining whether a body sponsored or created by a state is itself a "state" is often a difficult task. *See Grosz v. State of Indiana,* 730 F.Supp. 1474, 1477 (S.D.Ind. 1990). The application of the eleventh amendment "is to be determined not by the mere names of the titular parties but by the essential nature and effect of the proceeding, as it appears from the entire record." *In re State of New York,* 256 U.S. 490, 500, 41 S.Ct. 588, 590, 65 L.Ed. 1057 (1921), *quoted in Grosz,* 730 F.Supp. at 1477. In deciding

this issue, the Seventh Circuit has set forth two factors for us to consider: (1) the extent of the entity's financial autonomy from the state and (2) its general legal status. *Kashani v. Purdue University,* 813 F.2d 843, 845–47 (7th Cir.1987); *see also Adden v. Middlebrooks,* 688 F.2d 1147, 1153 (7th Cir.1982). Although the issue is a close one, we find that the application of these factors in this case indicates that the IHFA is not a state or state agency.

■ The first factor, an entity's financial autonomy, is "the most salient." *Hess v. Port Authority Trans–Hudson Corp.,* —— U.S. ——, ——, 115 S.Ct. 394, 404, 130 L.Ed.2d 245 (1994). This criterion looks at "the extent of state funding, the state's oversight and control of the [entity's] fiscal affairs, the [entity's] ability independently to raise funds, whether the state taxes the [entity], and whether a judgment against the [entity] would result in the state increasing its appropriations to the [entity]." *Kashani,* 813 F.2d at 845.

Here, we note that the Authority exercises a great amount of financial autonomy. For example, the IHFA has the authority to raise funds independently of the State of Indiana. It can issue bonds or notes in order to generate revenue, § 5–20–1–8, and has the discretion to create capital reserve funds to secure those notes. § 5–20–1–16(a). Indeed, as the Authority concedes, it "does not now receive annual appropriations from the state; it relies on income generated through loans and the issuance of bonds, and on the receipt of public and private grants." (Defendants' Brief in Reply, p. 8). Thus, the Authority currently operates independent of state appropriations.

In light of this financial independence, the State's oversight of the IHFA's fiscal affairs is predictably narrow. The Authority, for example, need not submit its budget to the legislature for approval.[3] Rather, it need only submit to the governor and the general assembly an annual report of its activities for

---

3. As defendants concede, the IHFA is not subject to the Budget Agency Act, I.C. § 4–12–1–1 *et seq.,* which requires state agencies to submit detailed statements of their budgets to the Budget Agency "showing particularly the reason for any request-

ed increase or decrease over former appropriations." *Kashani,* 813 F.2d at 846. The Budget Agency then analyzes the statement and submits its recommendations regarding the agency's budget to the legislature.

the preceding year. § 5–20–1–18. True, as defendants correctly observe, the IFHA is subject to the oversight of the State Board of Accounts. That "oversight," however, consists of little more than making the authority subject to a uniform system of accounting that is prescribed for use by every public office, including municipalities and other political subdivisions not entitled to eleventh amendment immunity. *See* I.C. § 5–11–1–1 *et seq.*

Significantly, the Authority's obligations do not constitute liabilities of the state. According to the Indiana Code:

> Obligations issued under the provisions of this chapter do not constitute a debt, liability or obligation of the state of Indiana or a pledge of the faith and credit of the state of Indiana, but shall be payable solely from the revenues or assets of the authority. Under any circumstances, general fund revenues of the state of Indiana may not be used to pay all or part of the obligations of the authority, and there is no moral obligation of the state of Indiana to pay all or part of the obligations of the authority.

I.C. § 5–20–1–7(a).[4] In addition, the Authority may acquire, own, manage, operate, sell, assign, lease or mortgage real property on its own behalf, not that of the state. § 5–20–1–4(a)(6). It also has the power "to sue and be sued in its own name, plead and be impleaded." § 5–20–1–4(a)(18). Thus, at every level, the IHFA functions with a significant amount of operational independence.

 The second factor looks at the legal status of the entity. This factor includes such considerations as the statutory definition of the entity, the origin of the members of its governing body, the powers the entity has, and whether those powers derive from an independent source or are merely delegated by the state. *Kashani*, 813 F.2d at 847; *Lewis v. Northern Indiana Commuter Transportation District*, 898 F.Supp. 596, 600 (N.D.Ill.1995).

In this case, we find it significant that the IHFA is considered an independent legal entity under Indiana law. The Indiana Code defines the IHFA as "a public body corporate and politic of the state of Indiana." § 5–20–1–3(a). In *Steup v. Indiana Housing Finance Authority*, 273 Ind. 72, 402 N.E.2d 1215 (1980), the Indiana Supreme Court held that this language—like similar language used to create the Indiana Toll Road, Port and Office Building Commissions—created neither a state agency nor a private corporation. Rather, it established "a separate corporate entity which is an instrumentality or agency of the state *although it is not the state in its sovereign corporate capacity.*" *Id.,* 402 N.E.2d at 1218 (emphasis added), *quoting Orbison v. Welsh,* 242 Ind. 385, 179 N.E.2d 727, 734 (1962) (involving Indiana Port Commission); *see also Indiana State Toll–Bridge Comm'n v. Minor,* 236 Ind. 193, 139 N.E.2d 445, 449 (1957) ("The Indiana State Toll–Bridge Commission . . . is not the state in its corporate sovereign capacity"); *Book v. State Office Building Comm'n,* 238 Ind. 120, 149 N.E.2d 273 (1958) ("It seems to us that if . . . the language used in the Toll–Bridge Act created a separate entity which might be considered as an instrumentality of, but not the State in its corporate sovereign capacity, it must follow that the Legislature, by the use of almost identical language in the State Office Building Act, created the same kind of creature").

In scrutinizing the status of various Indiana agencies established by provisions similar to the IHFA's authorizing statute, at least two federal courts have concluded that these quasi-governmental corporate entities are separate and distinct from the State of Indiana. For example, in *Moss v. Calumet Paving Co.,* 201 F.Supp. 426 (S.D.Ind.1962), then Chief Judge Steckler considered whether the Indiana Toll Road Commission was a private corporation or an agency of the State of Indiana for purposes of determining eleventh amendment immunity. The court concluded that the commission was not entitled to immunity:

> authority under this chapter beyond the extent to which moneys shall have been so provided." I.C. § 5–20–1–7(b).

---

4. That provision further explains that any "[e]xpenses incurred by the authority may be made payable from funds provided pursuant to this chapter, and no liability shall be incurred by the

[I]n view of the decisions of the Supreme Court of Indiana concerning the status of the commissions previously mentioned, that they are separate corporate bodies created as instrumentalities of the state for public purposes, but cannot be considered as the State of Indiana in its corporate sovereign capacity, the court feels that it is required to hold that the State of Indiana is not the real party in interest, and therefore, that the action is not one against the state in violation of the eleventh amendment of the Constitution....

*Id.* at 429–30.

Similarly, in *Indiana Port Comm'n v. Bethlehem Steel Corp.,* 702 F.2d 107, 110 (7th Cir.1983), the Seventh Circuit held that there was a "sufficient lack of identity between" the Port Commission and the State of Indiana to render the Commission a "citizen" of Indiana for purposes of establishing diversity jurisdiction. In so holding, the court concluded that the Commission was not the State's alter ego, but rather "an independent corporate entity seeking to assert its own rights." *Id.; Cf. Adden v. Middlebrooks,* 688 F.2d 1147, 1150 (7th Cir.1982) ("Whether we frame our analysis in terms of the applicability of the Eleventh Amendment or of the existence of diversity jurisdiction," the inquiry is the same).

Undeniably, the IHFA exhibits some attributes of a state agency. Five of its seven board members are selected by the governor.[5] I.C. § 5–20–1–3. Indeed, it was created by state statute and the State can alter or change its structure at any time. I.C. § 5–20–1–17. Nevertheless, the IHFA retains significant financial and operational autonomy. It exercises "all of the powers necessary or convenient to carry out and effectuate the purposes and provisions of".its authorizing statute. I.C. § 5–20–1–4. It operates with little state supervision over its daily affairs and with no recourse to state coffers. It was purposefully organized to have independent legal status under Indiana law. Ac-

cordingly, we find that the Authority is not entitled to eleventh amendment immunity.

## B. Low–Income Housing Tax Credits Are Not Property Interests Protected by the Due Process Clause.

In Count II, plaintiffs allege that the Authority's denial of Locust Hill's and Hickory Ridge's tax credit applications violated the due process clause of the Fourteenth Amendment. The threshold requirement for a successful due process claim is the deprivation of a property interest. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Jones v. City of Gary,* 57 F.3d 1435, 1440 (7th Cir. 1995). To have a constitutionally protected property interest,

> a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Id.* 408 U.S. at 577, 92 S.Ct. at 2709; *see also O'Hare Truck Service, Inc. v. City of Northlake,* 47 F.3d 883, 885 (7th Cir.1995). In other words, property "is what is securely and durably yours under state [or federal] law, as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain." *Reed v. Village of Shorewood,* 704 F.2d 943, 948 (7th Cir.1983). In the absence of an underlying property interest, however, "the Due Process Clause does not require states to obey their own procedural rules." *Kim Construction Co., Inc. v. Village of Mundelein,* 14 F.3d 1243, 1246 (7th Cir.1994).

According to plaintiffs, the operation of § 42 of the Internal Revenue Code in conjunction with the Indiana Allocation Plan creates a constitutional entitlement to the tax credits. We disagree. Section 42 of the Code does little more than require states to distribute credits pursuant to a "qualified allocation plan." Although certain selection criteria must be included in that plan,[6] no

---

5. Four of these positions are directly appointed by the governor. The fifth position is reserved for the director of the department of financial institutions, who is also appointed by the governor.

6. Section 42(m)(1)(C) states that the following criteria must be included in a qualified allocation plan:

 (i) project location,

 (ii) housing needs characteristics,

specific directives mandate *how* the Authority must weigh or consider those criteria. In other words, once the criteria are considered, no particular outcome necessarily follows.

Nor does the Indiana Allocation Plan make the distribution of tax credits less discretionary. The Plan sets forth a two-tier evaluation scheme: first, in section E, the Plan requires the satisfaction of certain minimum guidelines before an application can be scored; second, the Authority then evaluates each remaining application by assigning points for certain characteristics. Although "[n]o credit allocation shall be awarded to any project which scores below a total of 100 points under" the Plan, (Allocation Plan, p. 13), no particular outcome is mandated by a score higher than one hundred. Indeed, the Plan explicitly cautions that the Authority retains the discretion to award credits irrespective of the number of points awarded:

> Notwithstanding the point ranking system set forth above, the Authority reserves the right and shall have the power to allocate Credits to a project irrespective of its point ranking, if such intended allocation is: (1) in compliance with code Section 42; (2) in furtherance of the Housing Goals stated herein; and (3) determined by the Board to be in the interests of the citizens of the State of Indiana.

(Allocation Plan, p. 18).

 "The existence of the type of property interest that is protected by the Federal Constitution depends upon explicitly mandatory language, in connection with the establishment of specified substantive predicates to limit discretion." *Fittshur v. Village of Menomonee Falls*, 31 F.3d 1401, 1406 (7th Cir.1994) (internal quotation marks omitted). Here, the tax credit allocation scheme envisioned by § 42 and the Indiana Plan appeals to discretion. The allocation criteria do not "contain specific directives to the [IHFA] such that if the regulation's 'substantive

 (iii) project characteristic,
 (iv) sponsor characteristics,
 (v) participation of local tax-exempt organizations,
 (vi) tenant populations with special housing needs, and
 (vii) public housing waiting lists.

predicates' are met, a particular outcome necessarily follows." *Kim Construction Co., Inc. v. Village of Mundelein*, 14 F.3d 1243, 1247 (7th Cir.1994), *citing Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 463, 109 S.Ct. 1904, 1910, 104 L.Ed.2d 506 (1989). Nor do § 42 and the Allocation Plan repeatedly use "explicitly mandatory language" that would necessitate the IHFA's acceptance of plaintiffs' credit applications. *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). We therefore find that plaintiffs do not possess a property interest sufficient to invoke due process protection and, accordingly, Count II of the complaint is dismissed.

**C. 26 U.S.C. § 42 Does Not Create Rights Privately Enforceable Under § 1983.**

 In Count I of the complaint, plaintiffs allege that the IHFA violated § 42 of the Code and the Indiana Allocation Plan when it denied plaintiffs' applications for tax credits. Rather than assert their claims directly, however, plaintiffs seek to enforce them under § 1983. Because we find that § 42 does not create rights enforceable under § 1983, plaintiffs fail to state a claim upon which relief may be granted.

 Section 1983 "provides a cause of action for violations of federal statutes as well as the Constitution." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508, 110 S.Ct. 2510, 2516, 110 L.Ed.2d 455 (1990).[7] Not all violations of a federal statute, however, give rise to such actions. Indeed, § 1983 "speaks in terms of rights, privileges, or immunities, not violations of federal law." *Golden State Transit Corp. v. City of L.A.*, 493 U.S. 103, 106, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989). Thus, § 1983 is unavailable unless the statute at issue creates "an enforceable statutory right." *Buckley v. City of Redding*, 66 F.3d 188, 190 (9th Cir.1995).

7. "It is therefore a truism, reiterated many times by this court, that mere allegations of state law infraction are insufficient to support a Section 1983 claim." *White v. Olig*, 56 F.3d 817, 820 (7th Cir.1995). Thus, to the extent that plaintiffs seek to enforce alleged violations of Indiana law under § 1983, such claims must be dismissed.

Whether a statute creates "enforceable rights" in turn depends on several factors, including: (1) whether the statutory provision at issue was intended to benefit the putative plaintiff; (2) whether the provision creates a binding obligation on the state rather than a mere congressional preference; and (3) whether the asserted interest is not so amorphous as to be beyond the competence of the judiciary to enforce. *Miller by Miller v. Whitburn,* 10 F.3d 1315, 1319 (7th Cir.1993); *see also Wilder,* 496 U.S. at 509, 110 S.Ct. at 2517.

This circuit most recently applied these factors in *City of Chicago v. Lindley,* 66 F.3d 819, 824 (7th Cir.1995). In that case, the court considered whether certain provisions of the Older Americans Act ("OAA"), 42 U.S.C. §§ 3001–3058ee, were enforceable under § 1983. Under the OAA, the federal government distributed funds to the states to provide a wide range of services to individuals over sixty. Like the low-income tax credit scheme at issue here, the OAA required each state to designate an agency responsible for creating a formula to determine the intrastate distribution of funds. The distribution formula in turn had to "take[ ] into account" several federal criteria in order to be approved by the federal Administration on Aging. 42 U.S.C. § 3025(a)(2)(C).

After surveying recent Supreme Court precedent in this area, the court concluded that the OAA did not create rights enforceable under § 1983. In particular, the court noted that the Act "provide[d] no additional guidance as to how the formulae" were to be taken into account by the state agency. *Lindley,* 66 F.3d at 826. Nor did the implementing regulations provide any additional instruction, requiring only that each state's funding formula pay "particular attention to low-income minority individuals." *Id.* at 827, *quoting* 45 C.F.R. § 1321.37(a).

In addition, the court found persuasive the fact that the OAA required that the state formulae be submitted to Administration on Aging for approval. Although such approval was not necessarily indicative that Congress intended to foreclose a § 1983 remedy, the Court explained that its inclusion made "clear that the absence of [a § 1983 remedy did] not make the ['takes into account'] clause a dead letter." *Id.* at 827 (internal quotation marks omitted), *quoting Suter v. Artist M.,* 503 U.S. 347, 360–61, 112 S.Ct. 1360, 1368–69, 118 L.Ed.2d 1 (1992). Thus, because "the OAA [did] not mandate explicitly that state formulae include specific numbers or types of funding factors," and because the statutory scheme contained an alternative form of enforcement, the court held that OAA's standards were too amorphous to be judicially enforceable. *Lindley,* 66 F.3d at 826.

The *Lindley* case relied heavily on *Suter v. Artist M.,* 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), where the Supreme Court concluded that § 671(a)(15) of the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 620–628, 670–679 ("Adoption Act"), did not create rights enforceable under § 1983. As in *Lindley,* the Adoption Act provided federal funds to the states with plans approved by the Secretary of Health and Human Services. The Act then delineated sixteen requirements that each plan had to satisfy, including a requirement that each state make "reasonable efforts" to prevent the need for removal of a child from her home. *Id.* at 351, 112 S.Ct. at 1364. However, because the statute provided no guidance "as to how 'reasonable efforts' [were] to be measured," *Id.* at 360, 112 S.Ct. at 1368, the Court concluded that the Adoption Act did not create a federally enforceable right under § 1983.

In light of this caselaw, we find that § 42(m) of the Internal Revenue Code is too vague and amorphous to create judicially enforceable rights under § 1983. Much like the statutes at issue in *Lindley* and *Suter,* § 42(m) lists several criteria that the IHFA must take into account when allocating the tax credits. And like the OAA and the Adoption Act, nothing in § 42(m) provides guidance as to how the statutory criteria are to be weighed or measured by the Authority. Nor do the implementing regulations, which provide only that the IHFA "may adopt rules or regulations governing the awarding of housing credit allocations," 26 C.F.R. § 1.42–1T(d)(4), cast much light on the subject.

Moreover, § 42(m)(1)(B)(iii) provides that a qualified allocation plan must "provide[ ] a

procedure that the agency ... will follow in monitoring for noncompliance with the provisions of this section and in notifying the Internal Revenue Service of such noncompliance." While this provision "may not provide a comprehensive enforcement mechanism so as to manifest Congress' intent to foreclose remedies under § 1983," *Suter,* 503 U.S. at 360, 112 S.Ct. at 1368, it places primary responsibility for assuring that state allocation plans conform to the statute's requirements on the IRS, not the courts. *See Martinez v. Wilson,* 32 F.3d 1415, 1420 (9th Cir.1994), *quoted in Lindley,* 66 F.3d at 827.

In short, § 42(m) does little more than condition the receipt of federal funds on the adoption of a plan satisfying certain criteria. Lacking detailed factors from which to determine whether the IHFA has complied with the statutory criteria, however, such conditions are insufficient to create an enforceable statutory right. *See Miller,* 10 F.3d at 1319, *quoted in Lindley,* 66 F.3d at 826 ("a § 1983 is unavailable if the federal statute at issue merely conditioned a state's receipt of federal funds on the adoption of a plan satisfying certain criteria").

In response, plaintiffs allege that § 42(m) requires state finance authorities to objectively evaluate credit applications and, presumably, this objectiveness requirement is sufficiently detailed to create a federally enforceable right. *See* Complaint, ¶ 21. Section 42(m), however, neither uses the term "objective" nor creates an objectiveness requirement as such. Indeed, many of its criteria, as plaintiffs concede, call on the Authority to measure subjective factors. More importantly, however, even if there were an objectiveness requirement, there is little to distinguish that requirement from the "reasonableness" standard found insufficient to create a federally enforceable right in *Suter.* In neither case is the standard accompanied by guidelines to be considered in determining whether a state has acted "reasonably" or "objectively."

 If § 42(m) creates any enforceable right, it is the right to insist that the IHFA create a qualified allocation plan which contains the listed criteria. *Clifton v. Schafer,* 969 F.2d 278, 284 (7th Cir.1992); *Suter,* 503

U.S. at 347, 112 S.Ct. at 1367. Plaintiffs, however, allege neither that the Authority has failed to create such a plan nor that the plan runs afoul of § 42(m). Rather, the essence of Count I is that the IHFA failed to follow its own selection criteria as outlined in the Allocation Plan. (Complaint, ¶ 28). As the Seventh Circuit has counseled, however, "a complaint alleging 'an isolated violation of a concededly legal plan' [is] not actionable under § 1983." *Miller,* 10 F.3d at 1319 n. 9, *citing Clifton,* 969 F.2d at 285. Accordingly, the Court finds that Count II of the complaint must be dismissed.

**D. The Authority Is Not Subject to the Federal Freedom of Information Act.**

 Plaintiffs allege in Count V of the complaint that the federal Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requires that the IHFA provide or make available "all records concerning the Finance Authority's reservation and allocation of Tax Credits." (Complaint, ¶ 52). A threshold requirement for maintaining such a claim is that the IHFA must count as an "agency" so as to fall within the statute's strictures.

The FOIA defines "agency" in 5 U.S.C. § 552(f):

(f) For purposes of this section, the term "agency" as defined in section 551(*l*) of this title includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent agency.

The reference to § 551(*l*) is to the Administrative Procedure Act's definition of agency, which includes "each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include" Congress, the judiciary and a few other select bodies. 5 U.S.C. § 551(*l*).

In determining whether an entity meets the agency definition under FOIA, courts have "generally employed a fact-specific functional approach." *Cotton v. Heyman,* 63

F.3d 1115, 1121 (D.C.Cir.1995). Indeed, "[a]ny general definition can be of only limited utility to a court confronted with one of the myriad organizational arrangements for getting the business of the government done." *Washington Research Project, Inc. v. Department of Health, Educ. and Welfare,* 504 F.2d 238, 245–46 (D.C.Cir.1974). Nevertheless, two factors are often described as relevant to the determination of agency status: (1) whether the entity has independent decisional authority, and (2) whether the entity is subject to extensive federal control. *Dong v. Smithsonian Institution,* 878 F.Supp. 244, 247 (D.D.C.1995).

The application of these criteria in this case demonstrates that the IHFA is not a federal agency as that term is used in FOIA. The IHFA is state, not federally, chartered. Most of its board of directors are appointed by Indiana's governor; the rest are board members by virtue of their positions in state government. The Authority is subject to almost no federal supervision over its business transactions, the State having accorded it "all of the powers necessary or convenient to carry out and effectuate" its purpose. I.C. § 5–20–1–4. Indeed, at most, federal control over its functions is limited to the oversight of federal funds.

In this respect, the case at bar is similar to *St. Michael's Convalescent Hosp. v. State of California,* 643 F.2d 1369 (9th Cir.1981). In that case, the Ninth Circuit considered whether FOIA's requirements applied to the California Department of Health Services ("DHS"), the agency responsible for administering California's medicare program. Although DHS was plainly a state agency, the plaintiffs argued that because it received federal funds through Medicaid "and Medicaid's pervasive statutory and regulatory scheme necessarily subject[ed] the DHS" to the provisions of the FOIA. *Id.* at 1373.

The court, however, concluded that DHS was not an "agency" within the meaning of FOIA. In so doing, it rejected plaintiffs' argument that the use of federal funds pursuant to federal regulations transformed DHS into a federal agency:

Federal funding reaches a countless number of activities of local and state governments. To assure that the federal funds are spent for the purposes for which they were intended, extensive federal regulations are promulgated and must be complied with. However, those regulations do not convert acts of local and state governmental bodies into federal governmental acts.

*Id.* at 1373–74. Thus, because plaintiffs did not contend that the federal government exercised the "'extensive, detailed and virtually day-to-day supervision' over the program that is needed to characterize the state bodies as federal agencies," the court affirmed the district court's dismissal of the claim. *Id., quoting Forsham v. Harris,* 445 U.S. 169, 180, 100 S.Ct. 977, 984, 63 L.Ed.2d 293 (1980); *see also Public Citizen Health Research Group v. Dept. of Health, Education and Welfare,* 668 F.2d 537 (D.C.Cir.1981) (PSROs, privately incorporated organizations that used federal funds and operated pursuant to federal regulations, were not "agencies" within meaning of FOIA).

The IHFA bears many similarities to the DHS. Both are creatures of state law. Both must meet certain statutory requirements set out by the federal government, but federal control over their functions is limited to oversight of federal funds. As *Convalescent Hospital* makes clear, however, the mere fact that an entity receives federal funds and is regulated to some extent by federal regulations does not bring it within the reaches of FOIA. The Court therefore finds that the IHFA does not fall within the purview of FOIA and, accordingly, plaintiffs' motion to dismiss the federal FOIA claim is granted.

**E. This Court Lacks Subject Matter Jurisdiction over the Remaining State Law Claims.**

The Court's jurisdiction over plaintiffs' federal claims is based on the federal question statute, 28 U.S.C. § 1331, which grants federal district courts original jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." Our jurisdiction over the state-law claims was based on the supplemental jurisdiction statute, 28 U.S.C. § 1367(a), which extends the jurisdic-

tion of federal courts to all claims that are sufficiently related to the claim on which original jurisdiction is based to be part of the same case or controversy within the meaning of Article III of the Constitution.

 Having dismissed DeHarder's federal constitutional and statutory claims, the Court notes that the remaining counts are based entirely upon state law. The supplemental jurisdiction statute provides that a district court may decline to exercise jurisdiction over pendent state-law claims if the court has dismissed all the claims over which it has original jurisdiction. 28 U.S.C. 1367(c)(3). A district court should consider and weigh the factors of judicial economy, convenience, fairness and comity in deciding whether to exercise jurisdiction over pendent state-law claims. *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 351, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988).

In this circuit, when all the federal claims are dismissed before trial, the balance of these factors directs us to decline to exercise jurisdiction over any remaining pendent state-law claims: "[W]hen all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Assoc'd Insurance Cos., Inc.,* 29 F.3d 1244, 1251 (7th Cir.1994). Having found no exceptions to this general rule that are applicable in this case, we therefore dismiss plaintiffs' state law claims without prejudice for lack of jurisdiction.

### III. PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION.

Because we have granted defendants' motion to dismiss, plaintiffs' motion for preliminary injunction is denied as moot.

### IV. CONCLUSION.

For the reasons set forth above, defendants motion to dismiss is GRANTED and plaintiffs' motion for preliminary injunction is DENIED AS MOOT.

It is so ORDERED.

## JUDGMENT

In accord with the Court's entry in the above named cause, the defendants' motion to dismiss Counts I, II and V (insofar as it seeks relief pursuant to the federal Freedom of Information Act) for failure to state a claim and Counts III, IV and V (insofar as it seeks relief pursuant to the Indiana Access to Public Records Act) for lack of subject matter jurisdiction is granted. Counts I, II and V (insofar as it seeks to state a federal claim) are hereby dismissed with prejudice. Counts III, IV and V (insofar as it seeks to state a state law claim) are dismissed without prejudice. Judgment is entered in favor of the defendants and against the plaintiffs on all of plaintiffs' claims. Each of the parties is to bear its respective costs in this case.

It is so ORDERED.