June 23, 2004

The Honorable Robert E. Talton
Chair, Urban Affairs Committee
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0208

Re: Whether the Texas Department of Housing
and Community Affairs' 2004 plan for allocating
low-income housing tax credits is consistent with
Senate Bill 264   (RQ-0161-GA)

Dear Representative Talton:

You ask whether various aspects of the Texas Department of Housing and Community
Affairs' 2004 plan for allocating low-income housing tax credits are consistent with Senate Bill 264,
a bill enacted in 2003 by the Seventy-eighth Legislature that extensively amended Government Code,
chapter 2306.[1]

## I.    Legal Background

### A.    Qualified Allocation Plans

Pursuant to section 42 of the Internal Revenue Code, 26 U.S.C. § 42, the federal
government makes available federal income tax credits to stimulate private developers to invest in
and construct low-income housing. *See* 26 U.S.C. § 42 (2000). These federal tax credits are
allocated between the states and awarded at the state level by a designated housing credit agency.
*See id.* § 42(h), (m). In Texas, the legislature has designated the Texas Department of Housing and
Community Affairs (the "Department" or "TDHCA") to administer the state's low-income housing
tax-credit program pursuant to Government Code, chapter 2306, subchapter DD. *See* TEX. GOV'T
CODE ANN. §§ 2306.6701-.6734 (Vernon Supp. 2004); *see also id.* § 2306.053(10) (Vernon 2000)
(authorizing the Department to "administer federal housing, community affairs, or community
development programs, including the low income housing tax-credit program").

Federal law charges a state housing credit agency, such as the Department, with allocating
tax credits pursuant to a "qualified allocation plan," which it defines to mean "any plan"

---

[1]*See* Letter from Honorable Robert E. Talton, Chair, Urban Affairs Committee, Texas House of Representatives,
to Honorable Greg Abbott, Texas Attorney General (Jan. 9, 2004) (on file with Opinion Committee, *also available at*
http://www.oag.state.tx.us) [hereinafter Request Letter].

> (i) which sets forth selection criteria to be used to determine housing priorities of the housing credit agency which are appropriate to local conditions,
>
> (ii) which also gives preference in allocating housing credit dollar amounts among selected projects to --
>
>> (I) projects serving the lowest income tenants,
>>
>> (II) projects obligated to serve qualified tenants for the longest periods, and
>>
>> (III) projects which are located in qualified census tracts (as defined in subsection (d)(5)(C)) and the development of which contributes to a concerted community revitalization plan, and
>
> (iii) which provides a procedure that the agency (or an agent or other private contractor of such agency) will follow in monitoring for noncompliance with the provisions of this section and in notifying the Internal Revenue Service of such noncompliance which such agency becomes aware of and in monitoring for noncompliance with habitability standards through regular site visits.

26 U.S.C. § 42(m)(1)(B). Section 42 also specifies certain selection criteria that must be included in a qualified allocation plan. *See id.* § 42(m)(1)(C) (providing that an allocation plan must include the following selection criteria: "(i) project location, (ii) housing needs characteristics, (iii) project characteristics, including whether the project includes the use of existing housing as part of a community revitalization plan, (iv) sponsor characteristics, (v) tenant populations with special housing needs, (vi) public housing waiting lists, (vii) tenant populations of individuals with children, and (viii) projects intended for eventual tenant ownership").

State law also directs the Department annually to adopt a qualified allocation plan, *see* TEX. GOV'T CODE ANN. § 2306.67022 (Vernon Supp. 2004) ("The board annually shall adopt a qualified allocation plan and a corresponding manual to provide information regarding the administration of and eligibility for the low income housing tax credit program."), which it defines as a plan adopted by the Department's governing board that

> (A) provides the threshold, scoring, and underwriting criteria based on housing priorities of the department that are appropriate to local conditions;
>
> (B) consistent with Section 2306.6710(e), gives preference in housing tax credit allocations to developments that, as compared to the other developments:

(i) when practicable and feasible based on documented, committed, and available third-party funding sources, serve the lowest income tenants per housing tax credit; and

(ii) produce for the longest economically feasible period the greatest number of high quality units committed to remaining affordable to any tenants who are income-eligible under the low income housing tax credit program; and

(C) provides a procedure for the department, the department's agent, or another private contractor of the department to use in monitoring compliance with the qualified allocation plan and this subchapter.

*Id.* § 2306.6702(a)(10). Numerous other chapter 2306 provisions direct the Department to include certain items in the annual qualified allocation plan or require the Department to consider certain funding priorities, information, criteria, or preferences in allocating housing tax credits.[2]

## B.    Agency Rules' Validity

You ask about the validity of the Department's 2004 qualified allocation plan, which the Department developed in the fall of 2003 and adopted as agency rules[3] pursuant to chapter 2306, subchapter DD. *See id.* §§ 2306.67022 (requiring the Department annually to adopt a qualified allocation plan), .6724(a)-(c) (requiring the Department's governing board to adopt and the Governor to approve a qualified allocation plan by December 1).[4] The 2004 qualified allocation plan (which you refer to as the "QAP") became effective January 1, 2004.[5] You ask whether certain plan provisions conform to chapter 2306 as amended in 2003 by the Seventy-eighth Legislature in Senate Bill 264. *See* Act of June 1, 2003, 78th Leg., R.S., ch. 330, 2003 Tex. Gen. Laws 1407 (Senate Bill 264). Senate Bill 264 became effective September 1, 2003 and applies to applications submitted to the Department after its effective date. *See id.* §§ 29, 32, 2003 Tex. Gen. Laws at 1424.

---

[2]*See, e.g.,* TEX. GOV'T CODE ANN. §§ 2306.111(d), (g), .6704, .6710(b), (e), .6718(b), .6725(a)-(b) (Vernon Supp. 2004).

[3]*See* Texas Department of Housing and Community Affairs Multifamily Finance Production Division 2004 Housing Tax Credit Program Qualified Allocation Plan and Rules (available at http://www.tdhca.state.tx.us/pdf/lihtc/04-FinalQAP-040116.pdf); WL 10 TAC ss 50.1-24 (effective January 4, 2004) ("200[4] Low Income Housing Tax Credit Program Qualified Allocation Plan and Rules") (to be codified at 10 TEX. ADMIN. CODE §§ 50.1-.24).

[4]*See* TEX. GOV'T CODE ANN. § 2306.6724(a) (Vernon Supp. 2004) ("Not later than September 30 of each year, the department shall prepare and submit to the board for adoption the qualified allocation plan required by federal law for use by the department in setting criteria and priorities for the allocation of tax credits under the low income housing tax credit program."), (b) ("The board shall adopt and submit to the governor the qualified allocation plan not later than November 15."), (c) ("The governor shall approve, reject, or modify and approve the qualified allocation plan not later than December 1.").

[5]*See id.; see also* 28 Tex. Reg. 11522 (2004) (repealing old sections 50.1-.16 and adopting new sections 50.1-.24, to be codified at 10 TEX. ADMIN. CODE §§ 50.1-.24) (Tex. Dep't of Housing and Cmty. Affairs).

The legislature has expressly granted the Department authority to adopt an annual qualified allocation plan. *See* TEX. GOV'T CODE ANN. § 2306.67022 (Vernon Supp. 2004). In adopting the plan, the Department has construed chapter 2306. Construction of a statute in agency rules by the administrative agency charged with the statute's enforcement "is entitled to 'serious consideration,' so long as the construction is reasonable and does not contradict the plain language of the statute." *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993) (quoting *Stanford v. Butler*, 181 S.W.2d 269, 273 (Tex. 1944)). However, the plan may be invalid despite the Department's attempt to perform its statutory duties if the plan exceeds the Department's statutory authority. *See R.R. Comm'n v. Arco Oil & Gas Co.*, 876 S.W.2d 473, 477 (Tex. App.–Austin 1994, writ denied). In deciding whether an administrative agency has exceeded its rulemaking powers, the determinative factor is whether the rule's provisions are "in harmony" with the general objectives of the statute. *See Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 750 (Tex. 1995); *Gerst v. Oak Cliff Sav. & Loan Ass'n*, 432 S.W.2d 702, 706 (Tex. 1968). In determining whether a rule is in harmony with a statute's general objectives, courts look to "all applicable provisions" of the act, rather than only one particular section. *Gerst*, 432 S.W.2d at 706.

In construing provisions of chapter 2306, we must give effect to the legislature's intent. *See* TEX. GOV'T CODE ANN. §§ 311.021, .023 (Vernon 1998); *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 960 (Tex. 1999); *Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 438 (Tex. 1997). To do so, we must first attempt to construe the statutes according to their plain language. *See In re Canales*, 52 S.W.3d 698, 702 (Tex. 2001); *RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607-08 (Tex. 1985). We may also consider, among other things, a statute's objectives, its legislative history, and the consequences of a particular construction. *See* TEX. GOV'T CODE ANN. § 311.023 (Vernon 1998); *see also id.* § 311.021(2)-(4) ("In enacting a statute, it is presumed that . . . the entire statute is intended to be effective[,] a just and reasonable result is intended[, and] a result feasible of execution is intended . . . ."). Finally, we must also consider individual statutes in the context of chapter 2306 as a whole. *See Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) ("[W]e must always consider the statute as a whole rather than its isolated provisions. We should not give one provision a meaning out of harmony or inconsistent with other provisions, although it might be susceptible to such a construction standing alone.") (citations omitted); *see also* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998) (words and phrases to be read in context).

## II.   Analysis

### A.   Section 2306.6710(b): Tax-Credit Application Scoring and Ranking

You ask two questions about the validity of the Department's 2004 qualified allocation plan in light of Senate Bill 264's amendments to section 2306.6710(b) of the Government Code. *See* Request Letter, *supra* note 1, at 1. Section 2306.6710(a) requires the Department to determine whether a tax-credit application "satisfies the threshold criteria required by the board in the qualified allocation plan." TEX. GOV'T CODE ANN. § 2306.6710(a) (Vernon Supp. 2004).[6]

---

[6]*See also* TEX. GOV'T CODE ANN. §§ 2306.6702(a)(15) (Vernon Supp. 2004) ("'Threshold criteria' means the criteria used to determine whether the development satisfies the minimum level of acceptability for consideration (continued...)

Section 2306.6710(b) requires the Department "to score and rank" applications that have met the threshold criteria "using a point system" that:

    (1) prioritizes in descending order criteria regarding:

        (A) financial feasibility of the development based on the supporting financial data required in the application that will include a project underwriting pro forma from the permanent or construction lender;

        (B) quantifiable community participation with respect to the development, evaluated on the basis of written statements from any neighborhood organizations on record with the state or county in which the development is to be located and whose boundaries contain the proposed development site;

        (C) the income levels of tenants of the development;

        (D) the size and quality of the units;

        (E) the commitment of development funding by local political subdivisions;

        (F) the level of community support for the application, evaluated on the basis of written statements from state elected officials;

        (G) the rent levels of the units;

        (H) the cost of the development by square foot; and

        (I) the services to be provided to tenants of the development; and

    (2) uses criteria imposing penalties on applicants or affiliates who have requested extensions of department deadlines relating to developments supported by housing tax credit allocations made in the application round preceding the current round or a developer or principal of the applicant that has been removed by the lender, equity

---

[6](...continued)
established in the department's qualified allocation plan."), .6704(c) ("The department shall reject and return to the applicant any application assessed by the department under this section that fails to satisfy the threshold criteria required by the board in the qualified allocation plan.").

provider, or limited partners for its failure to perform its obligations
under the loan documents or limited partnership agreement.

*Id.* § 2306.6710(b). Section 2306.6710(c) requires the Department to "publish in the qualified allocation plan details of the scoring system used by the department to score applications." *Id.* § 2306.6710(c).

As we understand it, the 2004 qualified allocation plan ranks the nine section 2306.6710(b)(1) criteria in the order they appear in the statute in relation to each other. But the plan gives certain additional criteria, taken from 26 U.S.C. § 42 and other chapter 2306 provisions, more points and thus greater weight than some of the nine criteria.[7] For example, the Department indicates that the 2004 qualified allocation plan assigns points to two criteria not listed in section 2306.6710(b)(1) – housing needs in the proposed development's area and providing transitional housing for the homeless – that effectively rank those two criteria between the second and third section 2306.6710(b)(1) criteria. *See* TDHCA Brief, *supra* note 7, at 11, 16. As a result, you ask:

> Whether Section 2306.6710(b), . . . as amended by S.B. 264, is a mandatory provision that requires the 2004 QAP to rank applications for Low Income Housing Tax Credits by a point system that gives the greatest points, in descending order, to the nine factors listed?

> Whether the Department has discretionary authority to intersperse other factors into the ranking system that will have greater points than a factor listed in Section 2306.6710(b)?

Request Letter, *supra* note 1, at 1 (questions 1 and 2).

Section 2306.6710(b)(1) expressly requires the Department to score and rank applications according to nine criteria that the statute prioritizes in descending order. *See* TEX. GOV'T CODE ANN. § 2306.6710(b)(1) (Vernon Supp. 2004) ("the department shall score and rank the application using a point system that . . . prioritizes in descending order criteria regarding . . . ."), (b)(1)(A)-(I) (criteria). The Department must use a point system that prioritizes the criteria in that specific order. *See id.* § 2306.6710(b). Section 2306.6710(b)(1) does not assign points to each of the nine criteria. However, the statute must be construed to require the Department to assign more points to the first criterion than to the second, and so on, in order to effectuate the mandate that the scoring system "prioritiz[e the criteria] in descending order." *Id.* § 2306.6710(b)(1); *id.* §§ 311.021(2) (Vernon 1998) (in enacting a statute, it is presumed that the entire statute is intended to be effective); .023(1), (5) (in construing a statute a court may consider the statute's objectives and the consequences of a particular construction). Furthermore, the statute's plain language does not indicate that the nine criteria are optional or merely illustrative. Nor does section 2306.6710(b)(1) authorize the

---

[7]*See* Brief from Chris G. Wittmayer, General Counsel, Texas Department of Housing and Community Affairs, to Honorable Greg Abbott, Texas Attorney General, at 10 (Feb. 23, 2004) (on file with Opinion Committee) [hereinafter TDHCA Brief]; WL 10 TAC s 50.9(g) (selection criteria) (to be codified at 10 TEX. ADMIN. CODE § 50.9(g)).

Department to adopt additional criteria or to give higher priority or greater weight to any other criteria.

By contrast, prior to the 2003 amendments, section 2306.6710(b) required the Department to "score and rank" applications using a point system "based on criteria that are adapted to regional market conditions and *adopted by the department, including criteria . . .* regarding" eight listed items.[8]  Act of May 27, 2001, 77th Leg., R.S., ch. 1367, § 8.01, sec. 2306.6710(b), 2001 Tex. Gen. Laws 3391, 3440 (effective Sept. 1, 2001) (emphasis added).  The statute did not mandate that criteria be prioritized in any particular order.  Although it listed criteria, it expressly authorized the Department to adopt criteria, *see id.,* and the term "including" indicated that the listed criteria were not exclusive.  *See Badouh v. Hale,* 22 S.W.3d 392, 395 (Tex. 2000) ("it is a 'well settled rule that the words "include," "including," and "shall include" are generally employed as terms of enlargement rather than limitation or restriction'") (quoting *Republic Ins. Co. v. Silverton Elevators, Inc.,* 493 S.W.2d 748, 752 (Tex. 1973)).  In amending section 2306.6710 to delete the Department's authority to adopt criteria and by ranking nine specific criteria in a particular order, the legislature intended to change the law.  *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 681 (Tex. 1979) ("It is apparent that in amending the statute, the legislature intended some change in the existing law, and this court will endeavor to effect the change."); *Am. Sur. Co. of N.Y. v. Axtell,* 36 S.W.2d 715, 719 (Tex. 1931) (legislature presumed to have intended some change to existing law when amendment was enacted and effect must be given to amendment); *see also* TEX. GOV'T CODE ANN. § 311.023(1), (3), (5) (Vernon 1998) (in construing a statute a court may consider the statute's

---

[8]The former statute listed these criteria:

(A) the income levels of tenants of the development;

(B) the rent levels of the units;

(C) the period of guaranteed affordability for low income tenants;

(D) the cost by square foot of the development;

(E) the size, quality, and amenities of the units;

(F) the services to be provided to tenants of the development;

(G) the commitment of development funding by local political subdivisions that enables additional units for individuals and families of very low income; and

(H) the level of community support for the application, evaluated on the basis of written statements of support from local and state elected officials representing constituents in areas that include the location of the development; and

(2) imposing penalties on applicants or affiliates who have requested extensions of department deadlines relating to developments supported by housing tax credit allocations made in the application round preceding the current round.

Act of May 27, 2001, 77th Leg., R.S., ch. 1367, § 8.01, sec. 2306.6710(b)(1)-(2), 2001 Tex. Gen. Laws 3391, 3440-41. (effective Sept. 1, 2001).

objectives, its legislative history, and the consequences of a particular construction). Accordingly, we conclude that section 2306.6710(b) as amended does not authorize the Department to modify or add to the nine section 2306.6710(b)(1) criteria and that the statute does not authorize the Department to give other chapter 2306 criteria greater weight or higher priority than any of the nine.

The Department asserts that chapter 2306, read as a whole, authorizes it to assign other criteria greater weight than the section 2306.6710(b)(1) criteria. Summarizing its position, the Department states that it reads section 2306.6710(b)(1)

> to be mandatory and to require that its nine criteria be weighted in descending order. The plain language of the section, however, as well as a reasoned construction of all the requirements of [26 U.S.C.] § 42 and Chapter 2306, taken together as a consistent whole, do not require all other § 42 and Chapter 2306 criteria [to] have point values lower than the lowest of the nine criteria of § 2306.6710(b)(1).

TDHCA Brief, *supra* note 7, at 20. However, while chapter 2306 contains numerous provisions that require the Department to consider other criteria,[9] preferences,[10] or similar factors[11] in allocating tax

---

[9]*See, e.g.,* TEX. GOV'T CODE ANN. §§ 2306.6702(a)(10)(A) (Vernon Supp. 2004) (defining "qualified allocation plan" to mean a plan adopted by the Department's governing board that "provides the threshold, scoring, and underwriting criteria based on housing priorities of the department that are appropriate to local conditions"), .6725(a) ("[i]n allocating low income housing tax credits, the department shall score each application using a point system based on criteria adopted by the department that are consistent with the department's housing goals," including certain criteria).

[10]*See, e.g., id.* §§ 2306.127 ("In a manner consistent with the regional allocation formula described under Section 2306.111(d), the department shall give priority through its housing program scoring criteria to communities that are located wholly or partly in (1) a federally designated urban enterprise community; (2) an urban enhanced enterprise community; or (3) an economically distressed area or colonia."), .6702(a)(10)(B) (defining "qualified allocation plan" to mean a plan adopted by the Department's governing board that "consistent with Section 2306.6710(e), gives preference in housing tax credit allocations to developments that, as compared to the other developments: (i) when practicable and feasible based on documented, committed, and available third-party funding sources, serve the lowest income tenants per housing tax credit; and (ii) produce for the longest economically feasible period the greatest number of high quality units committed to remaining affordable to any tenants who are income-eligible under the low income housing tax credit program"), .6704(b) ("The department shall award in the application evaluation process described by Section 2306.6710 an appropriate number of points as an incentive for participation in the preapplication process."), .6710(e) ("In scoring applications for purposes of housing tax credit allocations, the department shall award, consistent with [26 U.S.C. § 42], preference points to a development that will: (1) when practicable and feasible based on documented, committed, and available third-party funding sources, serve the lowest income tenants per housing tax credit, if the development is to be located outside a qualified census tract; and (2) produce for the longest economically feasible period the greatest number of high quality units committed to remaining affordable to any tenants who are income-eligible under the low income housing tax credit program."), .6725(b) ("[t]he department shall provide appropriate incentives as determined through the qualified allocation plan to reward applicants who agree to" certain conditions).

[11]*See, e.g., id.* §§ 2306.111(d) ("The department shall allocate . . . commitments issued under the federal low income housing tax credit program . . . to all urban/exurban areas and rural areas of each uniform state service region based on a formula developed by the department that is based on the need for housing assistance and the availability of housing resources in those urban/exurban areas and rural areas, provided that the allocations are consistent with

(continued...)

credits, none directs the Department to consider other criteria, preferences, or factors before the nine section 2306.6710(b)(1) criteria or to give higher priority or greater weight to other criteria, preferences, or factors in evaluating applications.[12] By contrast, section 2306.6710 establishes express, mandatory procedures. After the Department has determined that an application satisfies its threshold criteria, *see* TEX. GOV'T CODE ANN. § 2306.6710(a) (Vernon Supp. 2004), it must then score and rank the application using a point system that prioritizes the statute's nine criteria in descending order, *see id.* § 2306.6710(b)(1). Given section 2306.6710(b)(1)'s express language, we believe that if the legislature had intended any other provision to authorize the Department to give higher priority or greater weight to other factors, the legislature would have said so expressly.

The Department contends that it must give other criteria greater weight than some of the nine section 2306.6710 criteria in order to harmonize section 2306.6710(b) with other chapter 2306 provisions. *See* TDHCA Brief, *supra* note 7, at 10. However, the Department may harmonize the other chapter 2306 provisions with section 2306.6710(b) by considering the other information, criteria and preferences but assigning them less weight than the section 2306.6710(b)(1) criteria. *See* TEX. GOV'T CODE ANN. § 311.021(2)-(4) (Vernon 1998) ("In enacting a statute, it is presumed that . . . the entire statute is intended to be effective [,] a just and reasonable result is intended[, and] a result feasible of execution is intended . . . .").[13]

---

[11](...continued)

applicable federal and state requirements and limitations."), (g) ("For all urban/exurban areas and rural areas of each uniform state service region, the department shall establish funding priorities to ensure that: (1) funds are awarded to project applicants who are best able to meet recognized needs for affordable housing, as determined by department rule; (2) when practicable and when authorized under [26 U.S.C. § 42], the least restrictive funding sources are used to serve the lowest income residents; and (3) funds are awarded based on a project applicant's ability, when consistent with [26 U.S.C. § 42], practicable, and economically feasible, to: (A) provide the greatest number of quality residential units; (B) serve persons with the lowest percent area median family income; (C) extend the duration of the project to serve a continuing public need; (D) use other local funding sources to minimize the amount of state subsidy needed to complete the project; and (E) provide integrated, affordable housing for individuals and families with different levels of income."), .185(a) ("The department shall adopt policies and procedures to ensure that, for a multifamily rental housing development funded through loans, grants, or tax credits under this chapter, the owner of the development: (1) keeps the rents affordable for low income tenants for the longest period that is economically feasible; and (2) provides regular maintenance to keep the development sanitary, decent, and safe and otherwise complies with the requirements of Section 2306.186."), .185(b) ("In implementing Subsection (a)(1) and in developing underwriting standards and application scoring criteria for the award of loans, grants, or tax credits to multifamily developments, the department shall ensure that the economic benefits of longer affordability terms and below market rate rents are accurately assessed and considered."), .6718(b) ("The department shall provide the elected officials with an opportunity to comment on the application during the application evaluation process provided by Section 2306.6710 and shall consider those comments in evaluating applications under that section.").

[12]*See supra* notes 9-11.

[13]We note that section 2306.6725(a) more generally requires the Department to score applications using a point system "based on criteria adopted by the department that are consistent with the department's housing goals" including six statutory criteria. *See* TEX. GOV'T CODE ANN. § 2306.6725(a) (Vernon Supp. 2004). Section 2306.6725(a) does not require the Department to score applications immediately after they have satisfied the threshold criteria or to prioritize criteria in any particular order. The legislature did not amend section 2306.6725(a) in 2003. To the extent section 2306.6710(b) and section 2306.6725(a) conflict, section 2306.6710(b) prevails. *See id.* § 311.025(a) (Vernon 1998) ("if statutes enacted at the same or different sessions of the legislature are irreconcilable, the statute latest in date of enactment prevails").

The Department asserts that 26 U.S.C. § 42(m), the federal provision requiring the Department to adopt a qualified allocation plan, requires it to modify the section 2306.6710(b)(1) criteria. *See* TDHCA Brief, *supra* note 7, at 15-17. Section 42(m) specifies certain selection criteria that must be included in a qualified allocation plan.[14] However, federal courts have held that "no specific directives [in section 42(m)] mandate *how* [a state housing credit agency] must weigh or consider those criteria. . . . [O]nce the criteria are considered, no particular outcome necessarily follows." *DeHarder Invest. Corp. v. Indiana Hous. Fin. Auth.*, 909 F. Supp. 606, 613-14 (S.D. Ind. 1995). "[N]othing in § 42(m) provides guidance as to how the statutory criteria are to be weighed or measured by the Authority." *Id.* at 615; *see also Barrington Cove Ltd. P'ship v. Rhode Island Hous. and Mortgage Fin. Corp.*, 246 F.3d 1, 6 (1st Cir. 2001) ("As the *DeHarder* court aptly noted, the federal statute simply mandates that states promulgate their own allocation plans regarding these federal income tax credits, without identifying any particular condition under which the states are obligated to allocate them."). Thus, while the Department must include the section 42(m) criteria in the allocation plan, the federal statute does not require the Department to give those criteria greater weight than the section 2306.6710(b)(1) criteria. The Department may comply with section 42(m) by ranking the section 42(m) criteria below the section 2306.6710(b)(1) criteria.

In answer to your specific questions, we conclude that section 2306.6710(b) "is a mandatory provision that requires the 2004 QAP to rank applications for Low Income Housing Tax Credits by a point system that gives the greatest points, in descending order, to the nine factors listed"[15] and that the Department lacks "discretionary authority to intersperse other factors into the ranking system that will have greater points than a factor listed in Section 2306.6710(b)." Request Letter, *supra* note 1, at 1. The 2004 qualified allocation plan contradicts section 2306.6710(b)'s plain language and exceeds the Department's authority to the extent it is inconsistent with section 2306.6710(b)(1).

## B.    Section 2306.359:  Private Activity Bonds

Next you ask "[w]hether the allocation criteria set forth in the 2004 QAP [are] in compliance with Section 15 of S.B. 264, regarding the issuance of private activity bonds?" Request Letter, *supra* note 1, at 1 (question 3). Section 15 amended Government Code chapter 2306,

---

[14]*See* 26 U.S.C. § 42(m)(1)(C) (2000) (providing that an allocation plan must include the following selection criteria: "(i) project location, (ii) housing needs characteristics, (iii) project characteristics, including whether the project includes the use of existing housing as part of a community revitalization plan, (iv) sponsor characteristics, (v) tenant populations with special housing needs, (vi) public housing waiting lists, (vii) tenant populations of individuals with children, and (viii) projects intended for eventual tenant ownership").

[15]We note that the Department and the requestors disagree over the Department's decision to subtract points for negative evidence regarding community participation, the section 2306.6710(b)(1)(B) criteria. *See* TDHCA Brief, *supra* note 7, at 9; Brief from Eric Opiela, Law Office of Eric C. Opiela, submitted on behalf of select members of the Texas House of Representatives, to Honorable Greg Abbott, Texas Attorney General, at 7 (Jan. 9, 2004) (on file with Opinion Committee) [hereinafter Opiela Brief]. Should the Department score a section 2306.6710(b)(1) criterion using a negative to positive point scale, the Department must ensure that the criterion's scoring maintains the priority order mandated by the legislature in section 2306.6710(b)(1), by, for example, scoring community participation using a scoring system that preserves its place below financial feasibility and above tenants' income levels. Given that the current scoring and ranking system is not consistent with section 2306.6710(b)(1), we cannot assess whether points assigned to particular section 2306.6710(b)(1) criteria appropriately prioritize the criteria.

subchapter P, which governs the Department's authority to issue bonds, by adding section 2306.359. *See* Act of June 1, 2003, 78th Leg., R.S., ch. 330, § 15, 2003 Tex. Gen. Laws 1407, 1415-16 (Senate Bill 264). Section 2306.359 provides that "[i]n evaluating an application for an issuance of private activity bonds, the department shall score and rank the application using a point system based on criteria that are adopted by the department, including" eight statutorily defined criteria and "other criteria as developed by the board." TEX. GOV'T CODE ANN. § 2306.359(a) (Vernon Supp. 2004).

Subchapter DD, which requires the Department to adopt an annual qualified allocation plan, does not govern the Department's authority to allocate housing tax credits to developments financed by private activity bonds, *see id.* § 2306.67021 ("Except as provided by Section 2306.6703, this subchapter does not apply to the allocation of housing tax credits to developments financed through the private activity bond program."); *see also id.* § 2306.6703 (making certain applicants ineligible for consideration), and the 2004 allocation plan does not govern the Department's authority to issue private activity bonds, *see* WL 10 TAC ss 50.1-.24 (to be codified at 10 TEX. ADMIN. CODE §§ 50.1-.24); TDHCA Brief, *supra* note 7, at 22. Rather, the Department explains, it has adopted the criteria for scoring private activity bond applications in another administrative rule, 10 TEX. ADMIN. CODE § 33.6(b) (2004). *See* TDHCA Brief, *supra* note 7, at 22.

A brief submitted on your behalf suggests that the Department did not consider section 15 of Senate Bill 264 in drafting the 2004 qualified allocation plan "because it believed S.B. 264 to be displaced by S.B. 1664," which amended section 1372.0321 of the Government Code. *See* Opiela Brief, *supra* note 15, at 14; Act of June 1, 2003, 78th Leg., R.S., ch. 1329, § 10, 2003 Tex. Gen. Laws 5014, 5017 (Senate Bill 1664 amending Government Code section 1372.0321). Section 1372.0321 requires the Texas Bond Review Board to give priority to certain types of projects "[i]n granting reservations to issuers of qualified residential rental project issues." TEX. GOV'T CODE ANN. § 1372.0321(a) (Vernon Supp. 2004); *see also id.* § 1372.001(1) (defining "board" to mean "the Bond Review Board"). Section 1372.0321 does not govern the authority of the Department to score private activity bond applications.

In answer to your specific question – "[w]hether the allocation criteria set forth in the 2004 QAP are in compliance with Section 15 of S.B. 264, regarding the issuance of private activity bonds"[16] – the qualified allocation plan is not required to comply with section 15 and therefore is not inconsistent with it. The Department has promulgated criteria pursuant to section 15 in a separate rule. You have not asked or briefed whether the rule on scoring private activity bond applications comports with section 15, *see* Request Letter, *supra* note 1, at 1-2; Opiela Brief, *supra* note 15, at 11-15, and we do not consider that issue.

C.     **Section 2306.6705: Notice to Neighborhood Organizations**

You also ask whether the 2004 qualified allocation plan's notice provisions comply with section 20 of Senate Bill 264. *See* Request Letter, *supra* note 1, at 1-2 (questions 4 and 5); Act of June 1, 2003, 78th Leg., R.S., ch. 330, § 20, 2003 Tex. Gen. Laws 1407, 1418. In section 20, the legislature amended section 2306.6705, which requires that a housing tax-credit application "must

---

[16]Request Letter, *supra* note 1, at 1 (question 3).

contain at a minimum the following written, detailed information in a form prescribed by the board." TEX. GOV'T CODE ANN. § 2306.6705 (Vernon Supp. 2004). Section 2306.6705(9) provides that the application must provide evidence that the applicant has notified certain officials and entities "with respect to the filing of the application," including "any neighborhood organizations on record with the state or county in which the development is to be located and whose boundaries contain the proposed development site." *Id.* § 2306.6705(9).[17]

The 2004 qualified allocation plan requires an applicant to publish notice in the local newspaper (or newspapers) and to provide notice by letter to certain individuals, including state and local officials, and neighborhood organizations. *See* WL 10 TAC s 50.9(f)(8)(A)-(B) (to be codified at 10 TEX. ADMIN. CODE § 50.9(f)(8)(A)-(B)). With respect to neighborhood organizations, the applicant must provide evidence that the applicant sent a letter requesting information on neighborhood organizations to the relevant city and county clerks. *See id.* § 50.9(f)(8)(B)(ii)(I). If the proposed development is located in an urban or exurban area, the applicant must provide notice to

> all entities identified in the letters from the city and county clerks whose listed address has the same zip code as the zip code for the Development . . . . If any other zip codes exist within a half mile of the Development site, then all entities identified in the letters from the city and county clerks with those adjacent zip codes must also be provided with written notification, and evidence of that notification must be provided.

*Id.* If the proposed development is located in a rural area, "all entities identified in the letters from the city and county clerks whose listed address is within a half mile of the Development site must be provided with written notification." *Id.*[18] The qualified allocation plan also requires an applicant to post signs regarding the proposed development on the proposed site. *See id.* § 50.9(f)(8)(C). Alternatively, the applicant may mail a written notice to all addresses "required for notification by local zoning notification requirements" or, if the community does not have zoning requirements, "all addresses within 1,000 feet of any part of the proposed Development site." *Id.* § 50.9(f)(8)(C)(i)-(ii).

---

[17]*See also* TEX. GOV'T CODE ANN. §§ 2306.6704(b-1)(1) (Vernon Supp. 2004) (preapplication process must require that the applicant has notified "any neighborhood organizations on record with the state or county in which the development is to be located and whose boundaries contain the proposed development site"), .6710(b)(1)(B) (scoring quantifiable community participation on the basis of written statements from "any neighborhood organizations on record with the state or county in which the development is to be located and whose boundaries contain the proposed development site").

[18]*See also* WL 10 TAC s 50.9(f)(8)(B)(ii)(I) (to be codified at 10 TEX. ADMIN. CODE § 50.9(f)(8)(B)(ii)(I)) ("If the Applicant can provide evidence that the proposed Development is not located within the boundaries of an entity on a list from the clerk(s), then such evidence in lieu of notification may be acceptable. If no reply letter is received from the city or county clerk by February 25, 2004, then the Applicant must submit a statement attesting to that fact. If an Applicant has knowledge of any neighborhood organizations on record with the state or county in which the Development is to be located and whose boundaries contain the proposed Development site, the Applicant must notify those organizations. If the Applicant has no knowledge of neighborhood organizations within whose boundaries the Development is proposed to be located, the Applicant must attest to that fact.").

You ask two questions regarding whether these notice requirements comply with section 2306.6705:

> Whether the notification process for neighborhood organizations in Section 50.9 (8)(B)(ii)(I) of the 2004 QAP is in compliance with S.B. 264, Section 20, codified at Section 2306.6705, Government Code, which requires that neighborhood organizations whose boundaries include the proposed development be notified, not those neighborhood organizations which are in the same ZIP code or neighboring ZIP codes?

> Whether the signage requirement/written notification alternative, provided for in Section 50.9 of the 2004 QAP has basis in statute and conforms to the legislative intent of S.B. 264?

Request Letter, *supra* note 1, at 1-2 (questions 4 and 5).

Section 2306.6705(9)(A) provides that an application must provide evidence that the applicant provided notice about "the filing of the application" to "any neighborhood organizations on record with the state or county in which the development is to be located and whose boundaries contain the proposed development site." TEX. GOV'T CODE ANN. § 2306.6705(9)(A) (Vernon Supp. 2004). The 2004 allocation plan requires an applicant to notify all neighborhood organizations identified in the letters from the city and county clerks whose listed address has the same zip code as the development's and, in some cases, adjacent zip codes. *See* WL 10 TAC s 50.9(f)(8)(B)(ii)(I) (to be codified at 10 TEX. ADMIN. CODE § 50.9(f)(8)(B)(ii)(I)). It also requires applicants to provide notice by posting signs at the development site or by mailing notice to addresses in the immediate vicinity. *See id.* § 50.9(f)(8)(C). The brief submitted on your behalf suggests that the plan's notice requirements exceed the Department's statutory authority because the plan may require an applicant to notify neighborhood organizations whose boundaries do not include the proposed development and because section 2306.6705 does not require posted signs or mailed notice. *See* Opiela Brief, *supra* note 15, at 17-18.

The Department counters that although the statute requires notice to neighborhood organizations, neither the state nor the counties maintain records that would identify the neighborhood organizations whose boundaries contain a proposed development site as specified by section 2306.6705(9)(A). *See* TEX. GOV'T CODE ANN. § 2306.6705(9)(A) (Vernon Supp. 2004) (requiring applicant to provide notice to "any neighborhood organizations *on record with the state or county* in which the development is to be located and *whose boundaries contain the proposed development site*") (emphasis added); TDHCA Brief, *supra* note 7, at 24-25. Given the difficulty in implementing section 2306.6705(9)(A), the Department explains that it adopted the signage or notice by mail requirement to provide notice to neighborhood organizations by alternative methods:

> [T]o avoid the complete failure of the neighborhood organization notification requirement because of the lack of state and county records, the Department determined to fulfill the legislative intent to

provide notice by signage or mailing. The alternative was to provide no notice, rendering the provision a nullity.

*Id.* at 25. The qualified allocation plan's notice requirements appear to establish reasonable methods to effectuate section 2306.6705(9)(A)'s purpose. *See* TEX. GOV'T CODE ANN. § 311.021(2)-(4) (Vernon 1998) ("In enacting a statute, it is presumed that . . . the entire statute is intended to be effective [,] a just and reasonable result is intended[, and] a result feasible of execution is intended . . . .").

Furthermore, the Department notes that section 2306.6705 merely outlines minimum application requirements and expressly authorizes the Department to require additional information in the qualified allocation plan. *See* TEX. GOV'T CODE ANN. § 2306.6705 (Vernon Supp. 2004) (emphasis added) ("An application must contain *at a minimum* the following . . . ."), (8) (providing that an application must contain "any other information required by the board in the qualified allocation plan"). The Department interprets section 2306.6705 to authorize it to adopt additional application requirements in the qualified allocation plan. The Department's construction of section 2306.6705 is reasonable and does not contradict the plain language and, therefore, is entitled to serious consideration. *See Tarrant Appraisal Dist.*, 845 S.W.2d at 823 ("Construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute.").

Considering the 2004 qualified allocation plan's notice requirements in light of section 2306.6705 as a whole, we conclude that the provisions requiring notice to neighborhood organizations in the same and adjacent zip codes and notice by posted signs or mail do not exceed the Department's statutory authority. *See Gerst*, 432 S.W.2d at 706 (in determining whether a rule is in harmony with a statute's general objectives, courts look to "all applicable" provisions of that act, rather than only one "particular section"). By its terms, the section 2306.6705(9)(A) notice requirement does not preclude the Department from requiring additional notice or notice by different methods. Moreover, section 2306.6705(8) expressly authorizes the Department to require applicants to provide additional information in the qualified allocation plan. The 2004 qualified allocation plan's notice requirements supplement rather than nullify the section 2306.6705(9)(A) notice requirement and are within the Department's statutory authority to adopt additional application requirements under section 2306.6705(8).[19]

---

[19]Section 2306.6710(b)(1) requires the Department to score applications' "quantifiable community participation with respect to the development" evaluated by written statements from "any neighborhood organizations on record with the state or county in which the development is to be located and whose boundaries contain the proposed development site." TEX. GOV'T CODE ANN. § 2306.6710(b)(1)(B) (Vernon Supp. 2004). This provision does not permit the Department to consider statements from neighborhood organizations whose boundaries do not contain the proposed development site. *See id.* As we have noted, however, federal law and chapter 2306 authorize the Department to consider other criteria provided that it gives such criteria less weight than the section 2306.6710(b)(1) criteria. *See supra* Part II.A.

### D.    Implications for 2004 Application Cycle

Finally, you ask how the Department should respond if we conclude that any aspect of the 2004 qualified allocation plan does not conform with Senate Bill 264:

> If the answer to any of the above questions is in the negative, what steps must be taken by TDHCA to ensure that the 2004 application cycle is conducted in accordance with law?

Request Letter, *supra* note 1, at 2 (question 6). We have concluded that the 2004 qualified allocation plan scoring criteria do not conform with the scoring criteria required by Government Code, section 2306.6710(b)(1), and that the plan exceeds the Department's authority to the extent it is inconsistent with section 2306.6710(b). The statutory requirements prevail over the plan the Department has adopted pursuant to its administrative authority. We understand that the Department is currently considering applications pursuant to the 2004 qualified allocation plan and the timetable required by section 2306.6724. The Department is not required to issue final commitments for allocations until July 31. *See* TEX. GOV'T CODE ANN. § 2306.6724(f) (Vernon Supp. 2004). The Department must score and rank 2004 housing tax-credit applications as required by section 2306.6710(b). However, it is for the Department, which is charged with administering the housing tax-credit program, and not this office, to determine in the first instance what steps the Department will take to ensure that it scores and ranks applications as required by section 2306.6710(b).

## S U M M A R Y

The Department of Housing and Community Affairs must first score and rank applications for low-income housing tax credits according to the nine statutory criteria prioritized in descending order in Government Code section 2306.6710(b)(1), as amended in 2003 by Senate Bill 264. It may score and rank applications according to other criteria and preferences established in 26 U.S.C. § 42 and chapter 2306 by giving those other criteria and preferences less weight than the section 2306.6710(b)(1) criteria. To the extent the Department's 2004 qualified allocation plan for allocating low-income housing tax credits gives other criteria and preferences greater weight, it is inconsistent with section 2306.6710(b)(1) and exceeds the Department's statutory authority.

The 2004 qualified allocation plan is not required to address private activity bond application scoring and ranking and therefore is not inconsistent with section 2306.359, as added by Senate Bill 264. With respect to providing notice about proposed developments to neighborhood organizations in the same and adjacent zip codes and by posting signs and mailing notices to addresses in the immediate vicinity, the 2004 qualified allocation plan is not inconsistent with section 2306.6705, as amended by Senate Bill 264.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee